IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE GLENN, | : | No. 1:cv-13-0325 |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| JAMES J. McGRADY, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Tyrone Glenn, an inmate confined at the State Correctional Institution at Dallas ("SCI-Dallas"), Pennsylvania, files this civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are Pennsylvania Department of Corrections Deputy Secretary Michael Klopotoski and Chief Grievance Officer Dorina Varner, and SCI-Retreat officials James McGrady, Superintendent, and Michael Hoover, Deputy Superintendent. In his complaint, Plaintiff alleges violations of his First and Fourteenth Amendment rights, as well as the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Presently before the Court is Defendants' motion to dismiss the complaint (Doc. No. 13), and Plaintiff's motion for leave to amend the complaint (Doc. No. 26). For the reasons that follow, the motion to amend will be denied and the motion to dismiss will be granted.

**I.     Allegations in the Complaint**

At the relevant time, Plaintiff was an inmate confined in the Restricted Housing Unit ("RHU") at SCI-Retreat. On May 23, 2012, he wrote to Defendant Hoover complaining about his inability to access the computers in the RHU law library due to steel grids placed in front of the computer screens. Plaintiff states that he is an older prisoner who wears glasses and that the steel grids make it difficult to read the material displayed on the screens. He requested to have the

steel grids replaced with plexiglass. Hoover informed Plaintiff that there are no plans to make any changes. (Doc. No. 1, Compl., ¶1.)

On September 21, 2012, Plaintiff received a notice of intention to dismiss his 2008 PCRA petition pursuant to Pa. R. Crim. P. 907 from the Philadelphia County Court of Common Pleas. (Id. ¶2.) He was informed he had twenty (20) days within which to respond. On September 28, 2012, Plaintiff spoke with Defendants McGrady and Klopotoski informing them of the difficulty he had reading material on the computer screens in the RHU, and of the deadline associated with his PCRA petition. (Doc. No. 1 ¶¶ 3-4.) Plaintiff also informed McGrady that he would be required to pay for any copies of legal materials requested from the main law library. According to Plaintiff, both Defendants responded that they could not help him. Later the same day, Plaintiff filed two (2) grievances (Grievances #430172 and #430174) regarding these issues. (Id. ¶¶5-6.) Both grievances were denied at every level.

Based on the foregoing, Plaintiff claims he was denied access to the courts and equal protection, as well as denied his rights under the Americans with Disabilities Act. He seeks declaratory, injunctive, compensatory and punitive relief.[1]

**II.     Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to

---

[1] Any request for declaratory or injunctive relief are moot since Plaintiff is no longer subjected to the conditions he alleges are unconstitutional based upon his transfer to a different prison. See Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir. 1993).

relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. at 556. "[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

**III.    Discussion**

    **A.    Claims Against Defendants in their Official Capacities**

Defendants first move to dismiss all Section 1983 claims brought against the Defendants in their official capacities for money damages as barred by the Eleventh Amendment. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the ... States ....", U.S. Const. Amend XI. By its terms,

the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune frm lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). This proscription directly applies here. Pennsylvania expressly withheld consent to suit when it enacted its exceptions to sovereign immunity. See 42 Pa. C.S. § 8521. Therefore suits against the Commonwealth of Pennsylvania and Pennsylvania officials acting in their official capacity are barred by the Eleventh Amendment. For these reasons, all Section 1983 claims set forth against Defendants in their official capacities for money damages will be dismissed.

      **B.**     **Lack of Personal Involvement**

Defendants move to dismiss the claims set forth against Defendant Varner on the basis of lack of personal involvement. In order to prevail in a § 1983 action, Plaintiff must establish two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

Section 1983 liability cannot be predicated solely on respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d 1195,1207 (3d Cir. 1988). Individual liability can only be imposed if the state actor played an "affirmative part" in the

alleged misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Rode, 845 F.2d at 1208, quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). Moreover, if an official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.3d at 1208; Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006). Further, simply alleging that an official failed to respond to a letter or request Plaintiff may have sent raising complaints is not enough to demonstrate they had the requisite personal involvement. See Rivera v. Fischer, 655 F. Supp. 2d 235 (W.D.N.Y. 2009)(Finding that many courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim.).

The only claim set forth in the complaint against Defendant Varner is that she was the final level of review with respect to her grievances, and that she upheld the denial of his grievances. Plaintiff cannot establish liability against Varner based solely upon her denial of Plaintiff's grievances. For these reasons, Defendants' motion to dismiss will be granted with respect to the claims set forth against Varner.

### C. Access to the courts

Plaintiff maintains that he was denied access to the courts in violation of the First Amendment when Defendants failed to respond to his complaints about the steel grids covering the computers in the RHU law library. Because he was unable to adequately see the case law on the computer due to the grids, he claims he was unable to prepare a response to the Philadelphia

County Court of Common Pleas notice of intention to dismiss his PCRA petition.

Under the First and Fourteenth Amendments, prisoners retain the right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996). However, a prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. Lewis, 518 U.S. at 349. Such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997). A necessary corollary to this principle is that, in order to prevail on an access to the courts claim, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim." Christopher v. Harbury, 536 U.S. 403, 415 (2002); see also Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008)(Finding that to meet this requirement, a plaintiff must show that the actions of the prison officials hindered the prisoner's efforts to pursue a nonfrivolous claim.).

Plaintiff contends that he suffered actual injury when he was unable to respond to the notice of intention to dismiss his PCRA petition issued by the Philadelphia Court of Common Pleas with respect to his challenge to his criminal conviction. A review of the docket in Plaintiff's criminal case reveals that the PCRA petition was filed in August of 2008.[2] (Doc. No. 17, Ex. 1, Docket Sheet.) It is clear Plaintiff did not suffer any actual injury with respect to his PCRA in that the Philadelphia County Court of Common Pleas had already determined that Plaintiff was not entitled to post-conviction relief and that the petition should be dismissed. More importantly, in his brief in opposition to Defendants' motion, Plaintiff agrees that his access to the courts claim should be dismissed. (Doc. No. 21 at 11.) For these reasons, Defendants' motion to

---

[2] The Court takes judicial notice of the docket in Commonwealth of Pa. v. Glenn, CP-51-CR-0923501-1980.

dismiss the access to the courts claim will be granted.

**D.     ADA claim**

Plaintiff brings a claim under Title II of the ADA. Plaintiff alleges that he wears glasses because he is vision impaired. (Doc No. 1.) He claims that the prison's use of the steel grids on the front of the computers, and the failure to replace the grids with plexiglass, prevent him from using the computers due to his disability. (Id.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participaton in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132(1). Under Title II of the ADA, "[t]he term qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Id. at § 12132(2). Further, the ADA defines "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities of such [an] individual"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." Id. at § 12102(1)(A)-©. The ADA provides that the term "disability" is to be liberally construed "in favor of broad coverage" "to the maximum extent permitted by the terms of [the] Act." Id. at § 12102(4).

Defendants move to dismiss this claim first because when sued in their individual capacities, they are not "public entities" for purposes of Title II of the ADA. Although Title II of

the ADA applies to state prisons and inmates, Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210-12 (1998), the proper defendant in a Title II claim is the public entity or an official acting in his official capacity. Therefore, as an initial matter, the Court finds that the individual defendants in their individual capacities are not liable under Title II of the ADA because they are not "public entities" within the meaning of the ADA. See Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002). Accordingly, Plaintiff is unable to state a claim against Defendants in their individual capacities, and the Court will dismiss such a claim.

To the extent Plaintiff is suing Defendants in their official capacities, the claim is viable as the Supreme Court has held that Title II of the ADA "validly abrogates state sovereign immunity" for "conduct that actually violates the Fourteenth Amendment." United States v. Georgia, 546 U.S. 151, 159 (2006). However, the Court finds Plaintiff's claim in this regard fails because he has not alleged that he is a qualified individual with a disability within the meaning of the ADA.

To establish a disability, a plaintiff must allege that he has a physical or mental impairment that "limits a major life activity." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002). "Major life activities" refer only "to those activities that are of central importance to daily life." Id. at 197. "These terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." Id. The limitation on the major life activity must be substantial. Id. at 196. The impairment's impact must also be permanent or long-term. Id. at 198. A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA. Kelly v. Drexel Univ., 94 F.3d 102, 108 (3d Cir. 1996) (citing Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995)).

It is true that the act of seeing is a major life activity. See, e.g., Lewis v. Pennsylvania,

609 F. Supp. 2d 409, 416 (W.D. Pa. 2009). However, while Plaintiff alleges impaired vision as his "disability," the need for corrective lenses does not render a person per se disabled; indeed, the ADA expressly provides that the "ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity." See 42 U.S.C.S. § 12102(4)(E)(ii). In his complaint, Plaintiff does not allege that he generally cannot see even with the assistance of his glasses, and that he is therefore substantially limited in the major life activity of seeing. Rather, he only avers that he has difficulty seeing the computer screens in the prison. The Court finds this is insufficient to allege that he is substantially limited in a major life activity, or is therefore a disabled individual covered by the ADA. See Crego v. Milwaukee Elec. Tool Corp., No. 05-0994, 2007 WL 2821991, at *11 (E.D. Wis. Sept. 27, 2007) ("[B]eing able to read a computer screen for long periods of time is not a major life activity."). Therefore, the Court will dismiss his ADA claim.

### E. Equal Protection

Defendants also seek to dismiss Plaintiff's claim that Defendants discriminated against him. "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Vacco v. Quill, 521 U.S. 793, 799 (1997); U.S. Const. Amend. XIV, § 1. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly situated be treated alike. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996). To state an equal protection claim a plaintiff must allege that (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly

situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental. Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 423-24 (3d Cir. 2000). Plaintiff has not alleged that any other similarly situated inmates were treated differently than he was. As such, the Court will dismiss his Equal Protection claim.

**IV.     Motion for Leave to Amend Complaint**

Almost two (2) months after Defendants filed their motion to dismiss the complaint, Plaintiff filed a motion for leave to file an amended complaint. He submits a proposed amended complaint along with his motion. In the amended complaint, he merely adds the Department of Corrections as a named Defendant and, in the relief section of the amended complaint, adds that he also seeks damages under the Eighth Amendment and the Rehabilitation Act.

Leave to amend rests in the discretion of the court and may, when justice so requires, be denied if the court finds "undue delay, bad faith or dilatory motive on the part of the movant, failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000).

Without unnecessary elaboration, leave to amend will not be granted in the instant case. Adding the Pennsylvania Department of Corrections as a defendant would be futile. The DOC is not a proper defendant with respect to Plaintiff's claims brought pursuant to § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Pettaway v. SCI Albion, 487 F. App'x 766, 768 (3d Cir. 2012). Further, any ADA claim set forth against the DOC would fail for the reasons discussed above with respect to the individual Defendants named herein. To the extent Plaintiff

now attempts to seek damages under the Eighth Amendment and the Rehabilitation Act, he neither sets forth any allegations in support of these grounds or offers any explanation as to why these claims could not have been included in the original complaint. Accordingly, his request to amend at this juncture will be denied. An appropriate order follows.